Fairle MATTHEWS, Appellant,

v.

The UNIVERSITY OF TEXAS, Appellee.

No. 3397.

Court of Civil Appeals of Texas.

Waco.

Oct. 23, 1956.

McKool & Bader, Dallas, for appellant.

John Ben Shepperd, Atty. Gen., A. M. LeCroix, Asst. Atty. Gen., for appellee.

TIREY, Justice.

This is a compensation case. Appellant brought her suit under the provisions of Art. 8309d, Vernon's Ann.Civ.St., as sole beneficiary of her husband, Leonard Matthews. In her petition she alleged substantially that on the date of her husband's death he was a "workman" of defendant and that his death was caused by accidental injuries sustained while in the course and scope of his employment as a security officer for the University. Appellee seasonably filed its motion for summary judgment, in which it denied that Leonard Matthews was a workman within the provisions of the foregoing Act and therefore no genuine issue as to any material fact existed. By way of verified pleadings and affidavits filed in support of its motion appellee admitted that on the date of his death the deceased was and for nearly a month prior thereto had been employed by it as a security officer, but alleged that, nevertheless, prior to his employment he had been required to take a physical examination, after which the examining physician rejected him and refused to certify him

as physically fit; that thereafter Matthews, in writing, accepted the results of said examination and executed a written waiver of all rights under Art. 8309d; that such waiver was accepted by appellee and that after such acceptance deceased was employed as a security officer. These sworn allegations of fact made by appellee were not denied by appellant in her answer to appellee's motion. Appellant's answer alleged substantially that by reason of defendant having put Leonard Matthews to work and placed him on the payroll that defendant had waived and was estopped to assert its right to deny that Matthews was a workman.

In the judgment we find this recital: "* * * and it further appeared that the motion was accompanied by affidavits and that opposing affidavits had been served and were before the court; and the court having considered the pleadings and admissions on file, together with such affidavits, and further that they showed an absence of genuine issue of any material fact and that this summary judgment should be rendered on behalf of defendant * * *," and the court decreed that plaintiff take nothing.

Appellant assails the judgment on three points. They are substantially:

1. The court erred in granting summary judgment because Leonard Matthews was a "workman" of The University of Texas within the meaning of Art. 8309d, V.A.C.S.

2. The court erred in granting summary judgment because The University of Texas waived any claim that Leonard Matthews was not a "workman" by putting him on the payroll and treating him as a "workman" and therefore waived any rights they may have had to deny that Leonard Matthews was a "workman" and are now estopped to deny that he was a workman within the meaning of Art. 8309d, V.A.C.S.

3. The waiver of rights to compensation signed by Leonard Matthews did not bind or affect appellant since appellant had a distinct and separate cause of action which could not be waived by deceased Leonard Matthews.

We overrule each of the foregoing points for reasons which we shall hereafter state.

First of all, there has always been a difference between the rights of a private employee injured while on the job and the rights of an injured State employee. At common law, before the existence of workmen's compensation statutes, a private employee had a right of action in negligence against his employer; while a State employee had no such right against his employer, the State, because the common law rule has long been firmly established that the State is not liable for the negligence of its agents, servants or employees. The workmen's compensation statutes adopted by the various states have modified the foregoing rule to the extent that such employees were covered under the terms of the statute. In 1917 our Legislature enacted what is fundamentally our present general workmen's compensation statute. Art. 8306 et seq. The purpose of this legislation was to do away with common law customs and provide a fixed compensation payable to the employee or his beneficiary upon the happening of any injury while in the course of his employment, without reference to any negligence on the part of the employer or his servants, and without regard to many of the defenses available to the employer at common law. The statute enacted in 1917 did not apply to State employees and give them compensation rights, because the legislature at that time did not have power to authorize a workmen's compensation plan for State employees because of Secs. 50 and 51 of Art. III of the State Constitution, Vernon's Ann.St. An enabling amendment was adopted in 1936, art. 3, § 59, authorizing the legislature to provide for workmen's compensation for State employees, and to further provide for the payment of all costs and premiums on such policies of insurance. After being granted such authority

by the enabling amendment, the legislature did not see fit immediately to pass a single blanket workmen's compensation plan for State employees, nor did it choose to make the general workmen's compensation law, Art. 8306 et seq., apply to all State employees, but instead, from time to time, it chose to pass separate and different statutes applicable to a particular State agency or department. The first of these separate statutes was enacted in 1937 by the legislature and it is applicable to employees of the Highway Department, being Art. 6674s, V.A.C.S. This was later followed by the passage, in 1947, of Art. 8309b, which law was applicable to Texas Agricultural & Mechanical College and the various institutions under its management and control. In 1951 the Legislature passed Art. 8309d, which is applicable to the University of Texas and the institutions under its control and management, and it is this last article that is before us for consideration. So it is obvious that while employees of private employers are now governed by the general workmen's compensation statute, Art. 8306 et seq., this general law is not applicable to employees of appellee, who are governed expressly by Art. 8309d, except insofar as particular parts of the general law which have been expressly adopted and incorporated in Art. 8309d.

The basis of appellant's first point is that her deceased husband, Leonard Matthews, was a "workman" within the meaning of the foregoing Article. We overrule this contention. We think it is readily apparent upon a study of the Legislature's careful and explicit definition of the term "workman" and of those who are entitled to benefit under the Act, namely par. 2 of Sec. 2 of said Article, which reads:

> "2. 'Workman' shall mean every person in the service of The University of Texas under any appointment or expressed contract of hire, oral or written, whose name appears upon the payroll of The University of Texas except,

> "(a) Administrative staff including officers of administration,

> "(b) Teaching staff who are not required by their teaching or research duties to handle or work in close proximity to dangerous chemicals, materials, machinery or equipment,

> "(c) Research staff who are not required to handle or work in close proximity to dangerous chemicals, materials, machinery or equipment,

> "(d) Clerical and office employees not required by their duties to regularly travel or work in a dangerous area,

> "(e) Supervisory staff whose duties are predominately administrative and clerical and who do not participate in manual labor, or work in a dangerous area,

> "(f) Persons paid on a piecework basis, or any basis other than by the hour, day, week, month, or year.

> "Provided further, that no person shall be classified as a 'workman' nor be eligible to any compensation benefits under the terms and provisions of this Act until he shall have submitted himself first to a physical examination by a regularly licensed physician or surgeon designated by The University of Texas to make such examination and thereafter been certified by The University of Texas to be placed on the payroll of The University of Texas."

It is clear from the foregoing provisions that our Legislature has carefully provided three essential requirements necessary before a person can be a "workman" or entitled to any compensation benefits under the Act. They are: (1) employed in a job not falling within one of the exempt categories; (2) submission to a physical examination; and (3) certified on the payroll. The first two requirements are self-explanatory, and the appellee did not deny

274

that Leonard Matthews fulfilled both of them, but appellee contends that Matthews could not and did not qualify under the third requirement, namely, "thereafter been certified by The University of Texas to be placed on the payroll of The University of Texas." The third requirement is controlled by Sec. 14 of the Act, which reads:

"No person shall be certified as a workman of the institution under the terms and provisions of this Act until he has submitted himself for a physical examination as provided in Section 13 herein and has been certified by the examining physician or surgeon to be physically fit to perform the duties and services to which he is to be assigned, provided that absence of a physical examination shall not be a bar to recovery."

We think it is pertinent here to quote Section 13 of the Act, which provides:

"The institution is authorized to promulgate and publish such rules and regulations and to prescribe and furnish such forms as may be necessary to the effective administration of this Act, and the institution shall have authority to make and enforce such rules for the prevention of accidents and injuries as may be deemed necessary. It shall be the duty of the institution to designate a convenient number of regularly licensed practicing physicians and surgeons for the purpose of making physical examinations of all persons employed or to be employed in the service of the institution to determine who may be physically fit to be classified as 'workman' as that term is defined in subsection 2 of Section 2 of this Act, and said physicians and surgeons so designated and so conducting such examinations shall make and file with the institution a complete transcript of said examination in writing and sworn to upon a form to be furnished by the institution. It shall be

the duty of the institution to preserve as a part of the permanent records of the institution all reports of such examinations so filed with it."

By way of sworn pleadings and affidavits in support of its motion for summary judgment filed in the trial court, appellee alleged that prior to his employment Matthews was required and did submit to a physical examination; that he failed to pass same; that the examining physician refused to certify him to be physically fit to perform duties as a security officer, and that thereafter Matthews executed and delivered a written waiver of all of his rights and privileges, which waiver was accepted by appellee, after which Matthews was employed and put to work. The waiver is contained in Sec. 15 of the Act, and it is as follows:

"An agreement to waive his rights under this Act made in writing by any workman prior to his employment shall be valid."

None of the foregoing facts were denied by appellant in her controverting affidavit, nor at any time in the trial court. It is our view that Matthews, by reason of having taken and failed to pass his physical examination, and having been refused certification by the examining physician, and having executed the waiver provided for in Sec. 15 of the Act, was not a "workman" within the meaning of the Act and was not eligible to compensation benefits under the Act.

But appellant says in her brief, referring to her husband: "If he was not a workman, there would have been no necessity to sign the waiver because under any circumstances he could not become a workman because he failed the physical examination," and she contends that the University has waived its rights and is estopped to deny that her husband was a workman, and she specially pleaded in her verified answer, among other things: "* * * and any provision of the Act,

Art. 8309d, V.A.C.S., giving the University of Texas a right to refuse to certify Leonard Matthews is a provision of the Act for the benefit of the University and may be waived by it and was waived by the University by putting Leonard Matthews to work and placing him on the payroll as security officer and by making Leonard Matthews an employee of the University of Texas and a workman within the meaning of Art. 8309d, V.A.C.S." We are not in accord with this view and believe that it is in direct conflict with the very provisions and terms of the statute.

So far as we have been able to determine, the foregoing Art. 8309d, aforesaid, has not been before our appellate courts for adjudication, nor do we find any factual situation similar to this one under the foregoing statutory provisions. We think it pertinent here to remark that our Legislature has the right and duty to fix the public policy of our State and, in so doing, it has provided for compensation to State employees under our Constitution as amended and the terms of the statute as above set out.

Much has been written by our appellate courts on the construction and application of our general compensation statute, Art. 8306 et seq. It is this court's view that one of the clearest opinions relating to the foregoing statute is found in Texas Indemnity Ins. Co. v. Dill, Tex.Civ.App., 42 S.W.2d 1059 (opinion by Justice Hickman, now Chief Justice of our Supreme Court), also Tex.Com.App., 63 S.W.2d 1016. In the opinion in 42 S.W.2d 1059 we find the following general statements:

"This is wholly a statutory proceeding. It is being prosecuted under the Workmen's Compensation Law. That law provides * * * that, whenever a suit is brought thereunder, 'the rights and liability of the parties thereto shall be determined by the provisions of this law.' This would necessarily be true, even though the act itself had not so declared, for the proceeding is a stranger to the common law, and can derive no aid therefrom. Since whatever rights appellees have were created by this law, they must also be measured thereby. * * *

"The rule of liberal construction to carry out the beneficent purposes of this legislation does not operate to change the conclusion above announced. That rule is properly applied when there exists an ambiguity or uncertainty. But the statutes above quoted are not ambiguous or uncertain. There is nothing to construe. Were there any other provisions of the entire act which in any manner conflict with the provisions above quoted, then an ambiguity would arise, and we would be authorized to construe the act as a whole, in the light of the rule above referred to."

It is true that the foregoing statements are very general, but we think that they are in keeping with the public policy of the Legislature in passing the compensation act, and we think that these general rules or statements here quoted are applicable and controlling to Art. 8309d. Going back to the Dill case, the court held that had the driver of the truck survived the injuries that he sustained, he would not have been entitled to compensation, and inasmuch as the deceased driver would not have been entitled to compensation, that for the same reason his beneficiaries would be excluded, and the court based its reason therefor on the provisions of Art. 8309, sec. 1, second subsection 4, V.A.C.S., which provides: "Any reference to an employee herein who has been injured shall, when the employee is dead, also include the legal beneficiaries". Our Supreme Court affirmed the foregoing decision and it has not seen fit to change the rule.

Appellant in her argument says:

"The 'waiver' signed by Leonard Matthews does no more than affect

his rights under the workmen's compensation act, if it does that. Appellant does not concede that the waiver signed by Leonard Matthews would be valid as against him. However, it is immaterial insofar as the cause of action of the beneficiary, Fairie Matthews, is concerned. Article 8306, Section 8–a and Section 8–b of the general workmen's compensation act, provides for a separate and distinct cause of action in the heirs or beneficiary of the deceased employee. These provisions of Article 8306 have been specifically adopted by Section 7 of Article 8309d. Our Supreme Court has held that where an employee's death results from the injury, a new cause of action arises in favor of his beneficiaries, distinct from the cause of action which accrues in favor of the employee and which must be instituted in the manner provided by statute. Swain v. Standard Accident Insurance Co., 130 Tex. 277, 109 S.W.2d 750."

She also relies on Maryland Casualty Co. v. Stevens, Tex.Civ.App., 55 S.W.2d 149; Aetna Life Ins. Co. v. Otis Elevator Co., Tex.Civ.App., 204 S.W. 376; Maryland Casualty Co. v. McCrary, D.C., 29 F.Supp. 950, and Texas Employers Ins. Ass'n v. Morgan, Tex.Civ.App., 289 S.W. 75; Id., Tex.Com.App., 295 S.W. 588. We have considered very carefully the foregoing cases and it is our view that they are not applicable to the factual situation and the provisions of the statute here under consideration. In fact, we do not think they are in conflict with the pronouncements in the Dill case, supra.

Going back to the argument made by appellant, we think it wholly inapplicable to the factual situation here, and that such argument is contra to the pronouncements we quoted in the Dill case. Our Legislature had the right and duty in setting the public policy of our State to enact such provisions as it deemed neces-

sary to make compensation insurance available to certain State institutions employing labor, and in so doing it had the legal right to determine whether an applicant for employment was physically fit to be covered by compensation insurance, and if such prospective employee was not physically fit and desired to waive the benefits of the compensation statute in order to obtain a job that he could not get without waiving such benefits, we see no injustice to such employee or his surviving beneficiaries. Going back to the rule announced in the Dill case, if Leonard Matthews was not under the compensation statute, his widow was not. We think this view is in harmony with the expressed intention of our Legislature and the express provisions of the foregoing statute. Accordingly, it is our view that the Dill case, supra, is controlling here and the doctrines there announced require an affirmance of this case.

Affirmed.

HALE, J., took no part in the consideration and disposition of this case.